UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------



THE GREAT BRITISH TEDDY BEAR
COMPANY LIMITED,

                    COMPLAINT

            Plaintiff,                    JURY TRIAL DEMANDED

         -against-

MCNEIL-PPC, INC. and
VIDAL PARTNERSHIP, INC.

            Defendants.

-------------------------------------X

     Plaintiff The Great British Teddy Bear Company Limited

("Plaintiff"), for its Complaint herein, alleges as follows:

     1. Plaintiff, the owner of a copyright in a teddy bear,

brings this action to, amongst other things, recover damages for

copyright infringement and false advertising.


The Parties

     2. Plaintiff is a business corporation organized and

existing under the laws of Great Britain, with its principal

place of business in Great Britain. Plaintiff manufactures, and

owns the copyright in, a distinctive line of teddy bears dressed

as popular British figures.  These include the Queen of England,

a London Bobby, a Beefeater Guard, Sherlock Holmes and

Shakespeare.

a. Defendant McNeil-PPC, Inc. ("McNeil") is, on information and belief, a New Jersey corporation with its principal place of business in Fort Washington, PA. McNeil manufactures, amongst other things, the well-known allergy medication Zyrtec.

b. Defendant Vidal Partnership, Inc. ("Vidal") is, on information and belief, a New York business corporation with its principal place of business in New York, NY.  Vidal is an advertising agency specializing in advertising amongst Hispanics.

4. At all relevant times, Vidal acted on its own behalf and as agent for Defendant McNeil.


Jurisdiction and Venue

5. The Court has subject matter jurisdiction over this claim in that:

a. the action is between a citizen of a foreign country and citizens of the United States;

b. the action states a claim under the Copyright Act;

c. the action states a claim under Lanham Act.

6. Venue is properly laid in the Southern District in that Vidal is located in the Southern District, and that Plaintiff's claim arose here.

7. This Court has jurisdiction over the persons of Defendants in that:

      a. they transacted here, inasmuch as Vidal made decisions regarding the ad here, and Vidal's conduct is attributable to its principal McNeil.

      b. they do business here, inasmuch as Vidal is based in the Southern District, and McNeil advertises and sells its products here.

The Robin Hood Bear

8. Plaintiff's line of teddy bears are well-known in England and, increasingly, in the United States and Asia.  For example, the bear dressed as a Bobby accompanied the England Rugby team as mascot in the World Cup final, and was presented to the Prime Minister Gordon Brown at No.10 Downing Street in 2008.  The bears reflect the creative energy of Paul Jessup ("Jessup"), a former children's illustrator who runs Plaintiff, and reflect the investment of time, energy and money.

9. One of the bears (the "Bear") is dressed as Robin Hood. It is eleven inches high, and wears Robin Hood's distinctive Lincoln Green outfit.  And significantly, the Bear carries a bow and arrow, albeit tipped with a suction cup.  Vidal's Sullivan-Brady would describe the Bear as being "Soooo cute."

3

10. The Bear was initially sold in Great Britain around October 2009.  Since late 2010, the Bear been marketed in the U.S., including at the Disney Theme Park in Florida and the Liberty Island gift shop in New Jersey.

11. In developing its bears, Plaintiff went to lengths to allay concerns that they might cause allergies. For example, the bears, including the Bear, are made of a hypoallergenic plush and are stuffed with a hypoallergenic stuffing in according with ASTMF & CSPIA Federal toy safety regulations.

Vidal's Ad Campaign

12. Around January 2012, Plaintiff was contacted by Michelle Sullivan-Brady ("Sullivan-Brady"), a manager at Vidal.  Sullivan-Brady sought Plaintiff's consent to use the Bear in an upcoming advertising campaign for Zyrtec, Defendant McNeil's well-known allergy medication.  The campaign targeted Hispanic women, whom Vidal regarded as being the decision makers in their families. According to Sullivan-Brady, the ads would be viewed only on mobile devices, and Vidal expected it to have 194 million impressions.

13. The concept of the campaign was that a beloved object-- such as a pet cat or a teddy bear-- might be the cause of an allergy sufferer's allergies, and that taking Zyrtec would enable

4

the allergy sufferer to continue enjoying the object.  In one version of the ad, the beloved object was a pet cat.  Sullivan-Brady was eager to use the Bear in a similar version because, according to her, the arrow it carried evoked the discomfort of an allergic reaction.

<u>The Misleading Ad</u>

14. Plaintiff initially granted permission to use the Bear, provided that Vidal introduce Plaintiff to a U.S. distributor. Thus, beginning on 3/12/12, ads featuring the Bear (the "Ad") began to run.

15. The ad, as described in a story board provided by Sullivan-Brady, is as follows (except that the text is in Spanish):

> a. The Zyrtec logo and banner appear, and according to the story board, the copy reads:
>
> "'Itchy eyes?'"
>
> b. Then, according to the story board:
>
> "A series of arrows land on the frame making it crack visually demonstrating the sensation that people experience when their eyes are irritated."

But that's not quite accurate: the arrows pierce the banner, whereas the arrow carried by the Bear has a suction cup.

> c. According to the story board, the Bear is what's responsible for the allergic reaction:

"The cracked banner falls into pieces and
reveals a lovable teddy bear with a bow and
arrow <u>showing that he is  responsible for the
damages</u>." (emphasis supplied)

d. Copy appears stating:

"It may be allergies to the dust
mites on your favorite teddy
bear.'"

e. Then, according to the story board,

"As the teddy bear is revealed a
new block of copy appears.

The copy states:

"'Try ZYRTEC® for relief of your
allergy symptoms.'"

f. And according to the story board, the following
animation occurs:

"The teddy bear moves slightly and a product
shot appears along with the call to action
button."

16. The Ad leaves, or would tend to leave, the false

impression that:

a. the Bear may cause allergies-- either because of its

materials or because it attracts dust mites;

b. the arrow carried by the Bear might cause injury.


<u>The Infringement</u>

17. By 3/18/12, it was obvious that Vidal would not be

6

making the promised introduction to a U.S. distributor.

18. Accordingly, on 3/18/12, Plaintiff revoked permission to use the Bear:

> "In light of you not fulfilling your side of the bargain I have no option <u>but to withdraw my permission</u> for our intellectual property to be used by your agency in any advertisement." (emphasis supplied).

19. Yet despite the explicit revocation of permission, Defendants continued to run the ad and will be running it through at least May 2012. ClickZ, a website which follows advertising, reports that Defendants intend to run the Ad possibly through August 2012.

20. Furthermore, on 5/1/12, Plaintiff sent Defendants a cease and desist letter calling on them to stop running the ad. However, on information and belief, Defendants continued and continue to run the ad.

21. As of the date of this Complaint, Vidal has still not made any introduction to a U.S. distributor.


<u>Damages</u>

22. By reason of the foregoing, Plaintiff suffered damages which at presently can not be accurately determined, but which Plaintiff believes are not less than $500,000.

7

AS AND FOR A FIRST CAUSE OF ACTION (Copyright Infringement)

23. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

24. The Bear is a sculptural work entitled to copyright protection under the Copyright Act.

25. Defendants infringed Plaintiff's copyright by displaying the Bear in the above-mentioned ad.

26. By reason of Defendants' conduct, Plaintiff suffered the above-mentioned damages.

AS AND FOR A SECOND CAUSE OF ACTION (False Advertising Lanham Act)

27. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

28. By reason of the foregoing, Defendants engaged in false advertising within the meaning of § 43 of the Lanham Act.

29. By reason of Defendants' conduct, Plaintiff suffered the above-mentioned damages.

AS AND FOR A THIRD CAUSE OF ACTION (False Advertising NY GBL 349)

30. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

31. By reason of the foregoing, Defendants engaged in false

8

advertising within the meaning of § 349 of New York's General Business Law.

32. By reason of Defendants' conduct, Plaintiff suffered the above-mentioned damages.

<u>AS AND FOR A FOURTH CAUSE OF ACTION (Misappropriation)</u>

33. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

34. By reason of the foregoing, Defendants misappropriated the Bear and its design.

35. By reason of Defendants' conduct, Plaintiff suffered the above-mentioned damages.

<u>AS AND FOR A FIFTH CAUSE OF ACTION (Unjust Enrichment)</u>

36. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

37. By reason of the foregoing, Defendants were unjustly enriched in an amount unknown to Plaintiff.

<u>AS AND FOR A SIXTH CAUSE OF ACTION (Injunctive Relief)</u>

38. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

39. Plaintiff lacks an adequate remedy at law.

40. By reason of the foregoing, Plaintiff is entitled to a preliminary and permanent injunction against continued use of the Bear.

WHEREFOR, Plaintiff demands judgment against Defendants, jointly and severally, as noted in the following table:

| No. | Claim | Demand |
|---|---|---|
| 1. | Copyright Infringement | $500,000 compensatory, $5 million punitive |
| 2 | False Advertising Lanham Act | $500,000 compensatory, $5 million punitive |
| 3 | False Advertising NY GBL | $1.5 million compensatory, $5 million punitive |
| 4 | Misappropriation | $500,000 compensatory, $5 million punitive |
| 5 | Unjust Enrichment | Unknown |
| 6 | Injunctive Relief | Preliminary and permanent injunction |
| All | | Attorneys fees, trial by jury, other appropriate relief |

Dated: New York, NY
      May 15, 2012

_____

Richard Pu (RP 2321)

120 E. 90th St., 10C
New York, NY 10128
(212) 427-3665 (o)