```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                              12 Civ 3926 (TPG)
THE GREAT BRITISH TEDDY BEAR
COMPANY LIMITED,                              FIRST AMENDED COMPLAINT

              Plaintiff,                      JURY TRIAL DEMANDED

       -against-

MCNEIL-PPC, INC. and
VIDAL PARTNERSHIP, INC.

              Defendants.

--------------------------------------X
```

Plaintiff The Great British Teddy Bear Company Limited ("Plaintiff"), for its First Amended Complaint herein, alleges as follows:

1. Plaintiff, the owner of a copyright in a stuffed animal, brings this action to, amongst other things, recover damages for copyright infringement and false advertising.

The Parties

2. Plaintiff is a business corporation organized and existing under the laws of Great Britain, with its principal place of business in Great Britain. Plaintiff manufactures, and owns the copyright in, a distinctive line of teddy bears dressed as popular British figures.  These include the Queen of England, a London Bobby, a Beefeater Guard, Sherlock Holmes and

Case 1:12-cv-03926-TPG   Document 15   Filed 07/20/12   Page 2 of 11

Shakespeare.  This action involves a bear dressed as Robin Hood.

    3. Defendants are as follows:

        a. Defendant McNeil-PPC, Inc. ("McNeil") is, on information and belief, a New Jersey corporation with its principal place of business in Fort Washington, PA. McNeil manufactures, amongst other things, the well-known allergy medication Zyrtec.

        b. Defendant Vidal Partnership, Inc. ("Vidal") is, on information and belief, a New York business corporation with its principal place of business in New York, NY.  Vidal is an advertising agency specializing in advertising amongst Hispanics.

    4. At all relevant times, Vidal acted on its own behalf and as agent for Defendant McNeil.

Jurisdiction and Venue

    5. The Court has subject matter jurisdiction over Plaintiff claims:

        a. The Court has jurisdiction under 28 U.S.C. 1332 in that the action is between a citizen of a foreign country and citizens of the United States, and the amount in controversy exceeds $75,000;

        b. the Court has jurisdiction over:

      i. Plaintiff's copyright claim under 28 U.S.C. §§ 1338(a) and (b), notwithstanding 28 U.S.C. 411(a), since the Bear is not a United States work; and

      ii. related claims under § 1367(a);

  c. the action states a claim under the Lanham Act, and the Court has jurisdiction over

      i. the Lanham Act claim under 28 U.S.C. 1331, and 1338(a) and (b), and

      ii. related claims under § 1367.

6. Venue is properly laid in the Southern District under 28 U.S.C. § 1391(b) and (c) in that Vidal is located in the Southern District, and that Plaintiff's claim arose here.

7. This Court has jurisdiction over the persons of Defendants in that:

  a. they transacted here, inasmuch as Vidal made decisions regarding the ad here, and Vidal's conduct is attributable to its principal McNeil.

  b. they do business here, inasmuch as Vidal is based in the Southern District, and McNeil advertises and sells its products here.

The Robin Hood Bear

8. Each of Plaintiff's teddy bears is an original foreign work that is subject to copyright protection under the Copyright Act, 17 U.S.C. § 101 et seq. And Plaintiff owns the copyright in each of its bears.

9. The bears are well-known in England and, increasingly, in the United States and Asia. The bears are the first choice of The Historic Royal Places, the British Government and the Armed Services. For example, the bear dressed as a Bobby accompanied the England Rugby team as mascot in the World Cup final, and was presented to the Prime Minister Gordon Brown at No.10 Downing Street in 2008. The bears reflect the creative energy of Paul Jessup ("Jessup"), a former children's illustrator who runs Plaintiff, and reflect the investment of time, energy and money.

10. One of the bears (the "Bear") is dressed as Robin Hood. It is eleven inches high, and wears Robin Hood's distinctive Lincoln Green outfit. And significantly, the Bear carries a bow and arrow, albeit tipped with a suction cup. Vidal's Sullivan-Brady would describe the Bear as being "Soooo cute."

11. The Bear was initially sold in Great Britain around October 2009. Since late 2010, the Bear been marketed in the U.S., including at the Disney Theme Park in Florida and the Liberty Island gift shop in New Jersey.

12. In developing its bears, Plaintiff went to lengths to

allay concerns that they might cause allergies. For example, the bears, including the Bear, are made of a hypoallergenic plush and are stuffed with a hypoallergenic stuffing in according with ASTMF & CSPIA Federal toy safety regulations.

<u>Vidal's Ad Campaign</u>

13. Around January 2012, Plaintiff was contacted by Michelle Sullivan-Brady ("Sullivan-Brady"), a manager at Vidal who was acting on behalf of Vidal and of McNeil.  Sullivan-Brady sought Plaintiff's consent to use the Bear in an upcoming advertising campaign for Zyrtec, Defendant McNeil's well-known allergy medication.  The campaign targeted Hispanic women, whom Vidal regarded as being the decision makers in their families. According to Sullivan-Brady, the ads would be viewed only on mobile devices, and Vidal expected it to have 194 million impressions.

14. The concept of the campaign was that a beloved object-- such as a pet cat or a teddy bear-- might be the cause of an allergy sufferer's allergies, and that taking Zyrtec would enable the allergy sufferer to continue enjoying the object.  In one version of the ad, the beloved object was a pet cat; in another, the object was flowers.  Sullivan-Brady was eager to use the Bear in a similar version because, according to her, the arrow it

carried evoked the discomfort of an allergic reaction.

The Misleading Ad

15. In January 2012, Plaintiff and Defendant Vidal commenced negotiations for the use of the Bear in an ad designed by Vidal. Shortly thereafter, Plaintiff provided Vidal with a specimen of the Bear, and offered to permit use of the Bear conditioned on Defendant providing an introduction to a distributor for the Bear.  Without providing the introduction, on 3/12/12, Defendants began running an ad featuring the Bear (the "Ad").

16.   The ad, as described in a story board provided by Sullivan-Brady, is as follows (except that the text is in Spanish):

> a. The Zyrtec logo and banner appear, and according to the story board, the copy reads:
>
> "'Itchy eyes?'"
>
> b. Then, according to the story board:
>
> "A series of arrows land on the frame making it crack visually demonstrating the sensation that people experience when their eyes are irritated."
>
> But that's not quite accurate: the arrows pierce the banner, whereas the arrow carried by the Bear has a suction cup.
>
> c. According to the story board, the Bear is what's responsible for the allergic reaction:
>
> "The cracked banner falls into pieces and

>    reveals a lovable teddy bear with a bow and arrow <u>showing that he is responsible for the damages</u>." (emphasis supplied)
>
>    d. Copy appears stating:
>
>    > "It may be allergies to the dust mites on your favorite teddy bear.'"
>
>    e. Then, according to the story board,
>
>    > "As the teddy bear is revealed a new block of copy appears.
>
>    The copy states:
>
>    > "'Try ZYRTEC® for relief of your allergy symptoms.'"
>
>    f. And according to the story board, the following animation occurs:
>
>    > "The teddy bear moves slightly and a product shot appears along with the call to action button."

17. The Ad leaves, or would tend to leave, the false impression that:

>    a. the Bear may cause allergies-- either because of its materials or because it attracts dust mites;
>
>    b. the arrow carried by the Bear might cause injury.

<u>The Infringement</u>

18. By 3/18/12, it was obvious that Vidal would not be making any introduction to a U.S. distributor.

19. Accordingly, on 3/18/12, Plaintiff made clear that Defendants did not have permission to use the Bear:

> "In light of you not fulfilling your side of the bargain I have no option <u>but to withdraw my permission</u> for our intellectual property to be used by your agency in any advertisement." (emphasis supplied).

20. Yet despite that e-mail, Defendants continued to run the ad and continued to run it at least until 5/2/12, and perhaps later. ClickZ, a website which follows advertising, reports that Defendants intend to run the Ad possibly through August 2012.

21. Furthermore, on 5/1/12, Plaintiff sent Defendants a cease and desist letter calling on them to stop running the ad. Defendant McNeil claims to have stopped use of the Bear upon receiving the letter, but Plaintiff has been unable to verify that claim.

22. As of the date of this Complaint, Vidal has still not made any introduction to a U.S. distributor.

<u>Damages</u>

23. By reason of the foregoing, Plaintiff suffered damages which at presently can not be accurately determined, but which Plaintiff believes are not less than $500,000, including Defendants' profits. Amongst other things:

    a. In the absence of permission from Plaintiff,

Defendants would have paid Plaintiff for use of the Bear;

 b. On information and belief, prospective purchasers refrained from purchasing the Bear after seeing the ads.

24. In addition, Plaintiff is entitled to recover from Defendants the profits, gains and advantages enjoyed by Defendants from their conduct.

### AS AND FOR A FIRST CAUSE OF ACTION (Copyright Infringement and Unfair Competition)

25. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

26. Defendants infringed Plaintiff's copyright by displaying the Bear in the above-mentioned ad and, in doing so, engaged in unfair competition.

27. By reason of Defendants' conduct, Plaintiff suffered the above-mentioned damages.

### AS AND FOR A SECOND CAUSE OF ACTION (False Advertising and Unfair Competition Lanham Act)

28. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

29. By reason of the foregoing, Defendants engaged in false advertising and unfair competition within the meaning of § 43 of

the Lanham Act.

30. By reason of Defendants' conduct, Plaintiff suffered the above-mentioned damages.

AS AND FOR A THIRD CAUSE OF ACTION (False Advertising and Unfair Competition NY GBL 349 and 350)

31. Plaintiff repeats each of the foregoing allegations with the same force and effect as if fully set forth hereinafter.

32. By reason of the foregoing, Defendants engaged in false advertising and unfair competition within the meaning of § 349 and 350 of New York's General Business Law.

33. By reason of Defendants' conduct, Plaintiff suffered the above-mentioned damages.

WHEREFOR, Plaintiff demands judgment against Defendants, jointly and severally, as noted in the following table:

| No. | Claim | Demand |
| --- | --- | --- |
| 1. | Copyright Infringement Damages | $500,000 as compensatory damages, injunctive relief barring continued use of Bear, accounting of Defendants' profits |
| 2 | False Advertising Lanham Act | $500,000 as compensatory damages, injunctive relief barring continued use of Bear |
| 3 | False Advertising NY | $1.5 million ($500,000 trebled) as compensatory damages, $5 million |

|  | GBL | punitive, injunctive relief barring continued use of Bear |
| All |  | Attorneys fees, trial by jury, other appropriate relief |

Dated: New York, NY
       July 20, 2012

                                           _____Richard Pu_____
                                           Richard Pu (RP 2321)

                                           120 E. 90th St., 10C
                                           New York, NY 10128
                                           (212) 427-3665 (o)